IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. MARY DeJULIUS, on behalf of herself and others similarly situated,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>1. SAND LILY HEALTHCARE, INC. d/b/a Excell Private Care Services,<br><br>　　　　　Defendant. | Case No. CIV-22-453-HE<br><br>JURY TRIAL DEMANDED<br>ATTORNEY LIEN CLAIMED |

## COMPLAINT

**COMES NOW** the Plaintiff, Mary DeJulius, on behalf of herself and others similarly situated, and pleads her claims as follows:

## PARTIES

1. The Plaintiff is Mary DeJulius, an adult resident of Cleveland County, Oklahoma. Plaintiff brings her claims on behalf of herself and others similarly situated.

2. The Defendant is Sand Lily Healthcare Inc. d/b/a Excell Private Care Services, a foreign for profit corporation doing business in Oklahoma County, Oklahoma.

## JURISDICTION AND VENUE

3. Plaintiff asserts the following claims:

   A. On behalf of herself and other similarly situated, Plaintiff asserts claims for failure to pay wages, including overtime wages, in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 206, *et seq*. and Oklahoma's Protection of Labor Act (OPLA), 40 Okla. St. § 165.1, *et seq*; and

1

B.  Individually, Plaintiff asserts claims of unlawful termination based on Plaintiff's disability and in retaliation for requesting disability accommodations, in violation of the Americans with Disabilities Act (ADA) and Oklahoma's Anti-Discrimination Act (OADA).

The state law claim arises from the same core of facts and jurisdiction over the state law claim is vested under 28 U.S.C. § 1367.

4. The actions giving rise to the Plaintiff's claims occurred in Cleveland County and Oklahoma County, both of which are counties within the Western District of Oklahoma. Accordingly, venue is proper in this Court.

## STATEMENT OF FACTS

### A – Facts Supporting Claim for Unlawful Termination

5. Defendant employs at least fifteen (15) employees for at least twenty or more weeks in the current or proceeding calendar year and is an employer under the ADA. There is no minimum employee requirement to be an employer under the OADA.

6. Plaintiff was employed by Defendant from around December 2018 until March 30, 2021 and worked under the title of Case Manager.

7. Plaintiff was qualified for her position and performed satisfactorily.

8. Plaintiff suffers from impairments including hypertension, diabetes and other heart-related impairments which, without the ameliorative effect of mitigating measures, would substantially limit one or more major life functions (including major bodily functions) such as heart, endocrine and circulatory functions.

9. Around March 23, 2021 Plaintiff began suffering weakness on the left side of her body, an inability to form complete words and sentences and similar symptoms.

10. Plaintiff told her supervisor, Carol Mulligan, about her conditions and opined that she was concerned she was having a heart attack or stroke.

11. Plaintiff had previously told Ms. Mulligan about her underlying medical conditions discussed in Para. 9, above.

12. Plaintiff was hospitalized from around March 23, 2021 until around March 29, 2021.

13. Plaintiff told her employer of her hospitalization and requested off work for that time period. Such request is a request for a reasonable accommodation for Plaintiff's medical conditions.

14. Defendant terminated Plaintiff's employment around March 27, 2021.

15. Ms. Mulligan stated that the Plaintiff was terminated because the Defendant was "going in a different direction".

16. As a direct result of the Defendant's conduct the Plaintiff has suffered, and continues to suffer, wage loss (including back, present and front pay along with the value of benefits associated with such wages) and emotional distress/dignitary harm including worry, frustration, anxiety and similar unpleasant emotions.

17. At the least, significant factors in the decision to terminate the Plaintiff were her disability and/or her request for accommodation. Plaintiff's request for accommodation may also have been a but-for cause of her termination.

18. The Plaintiff has exhausted her administrative remedies required to bring her claims for unlawful termination. Plaintiff filed an EEOC charge on September 10, 2021.

The EEOC issued Plaintiff her right to sue letter on November 11, 2022 and Plaintiff received such letter thereafter.  This complaint is timely filed within ninety (90) days of Plaintiff's receipt of her right to sue letter.

**B – Facts Supporting Claims for Unpaid Wages Made by Plaintiff on Behalf of Herself and Others Similarly Situated**

19. Defendant is incorporated in Nevada and does business in Oklahoma and Nevada has at least five hundred thousand dollars ($500,000) in annual gross revenue.

20. Defendant contracts with the State of Oklahoma to assist in carrying out Oklahoma's *Advantage* program.

21. The goal of the *Advantage* program is to provide services which allow Medicaid eligible persons who need nursing facility level of care to remain at home or in the residential setting of their choosing while receiving necessary care.[1]

22. Plaintiff's job duties included:

    A. Interviewing individuals who are part of the "Advantage Program" (hereinafter "Program Member") to determine what assistance and services each Program Member needs to remain in their home as an alternative to an assistant living center or other long-term care facility;

    B. Inputting the information obtained from the individuals into a computer program/database. The program/database is called "Harmony" and is maintained by the State of Oklahoma;

---

[1] https://oklahoma.gov/okdhs/services/aging/advantageadmin.html

    C.    Communicating with other agencies and entities to facilitate the transfer of supplies and services to Program Members; and

    D.    Refer Program Members to other needed services if such services cannot be obtained through the *Advantage* Program.

23. Defendant's work-week was from Sunday to the following Saturday, and Defendant used this period for purposes of calculating the number of hours Plaintiff worked each week.

24. Defendant billed the State of Oklahoma in "Units", with each Unit consisting of a 15-minute increment.

25. Each Program Member was allotted by the State of Oklahoma a certain number of "Units" each year (each year consisting of a twelve-month period beginning the date the individual became a Program Member).

26. Each job duty performed on behalf of a Program Member was divided into the categories of either "billable" or "non-billable".

27. Tasks that were "billable" were those for which Defendant could seek reimbursement from the State of Oklahoma. "billable" tasks counted against a Program Member's yearly allotment of Units. Examples of billable tasks include making calls to Program Members and providing other services directly to Program Members.

28. Non-billable tasks did not count against a Program Member's units and Defendant could not seek reimbursement of the costs of performing such tasks. Non-billable tasks included creating and maintaining Tracking Sheets that track information

about Program Members, and conducting audits to ensure documentation related to Program Members is accurate.

29. Employees who worked as Case Managers, Personal Care Assistants and in other positions were required to be paid on an hourly basis at a set rate of pay.

30. At the time she was hired, Plaintiff was promised a regular rate of pay of $21 per hour. Around April 19, 2020 Plaintiff was promised a regular rate of pay of $22 per hour.

31. With few exceptions, Monica Meek (Director) and Carol Mulligan (Case Management Supervisor/Director) instructed Case Managers (including Plaintiff) and others to report only the time they spent performing billable tasks and to not report to Defendant the time they spent performing non-billable tasks.

32. Additionally, Ms. Meek and Ms. Mulligan instructed Plaintiff and other employees to not record other hours they worked based on whether Defendant could seek reimbursement, the number of Units available to the Project Member receiving the services, and other factors.

33. Although Defendant was aware Plaintiff and other employees were working hours that were not documented (at the instruction of Ms. Meek and Ms. Mulligan), Defendant failed to pay Plaintiff and these other employees the time they worked.

34. Nearly every week between Plaintiff's hire date and the date of Plaintiff's separation, the Plaintiff was required to work – and did work – more than forty (40) hours per week, but was not paid either minimum or overtime wages for the hours worked over forty each week.

35. As a direct result of Defendant's conduct the Plaintiff, along with others similarly situated, have suffered, and continue to suffer, wage loss in the form of minimum wages, agreed-upon wages, and overtime wages.

36. Failure to pay agreed-upon wages is a violation of the Oklahoma Protection of Labor Act.

37. Plaintiffs and other similarly situated employees are entitled to recover their wage loss, including unpaid minimum wages, unpaid overtime and unpaid agreed-upon wages, along with liquidated damages under both the federal and state law claims.

## COUNT I

Plaintiff incorporates the above paragraphs and further alleges:

38. Termination on the basis of disability violates the ADA and OADA.

39. Under this Count the Plaintiff is entitled to her wage loss (including back, present and front pay along with the value of benefits associated with such wages)

40. Under the ADA the Plaintiff is entitled to compensatory damages including damages for emotional distress/dignitary harm.

41. Because Defendant's conduct was willful or, at the least, in reckless disregard of Plaintiff's federally protected rights, the Plaintiff is entitled to an award of punitive damages.

42. Under the OADA the Plaintiff is entitled to liquidated damages equal to the amount of her wage loss without an additional showing of recklessness or willfulness.

## COUNT II

Plaintiff incorporates the above paragraphs and further alleges:

43. Terminating an employee in retaliation for requesting accommodations violates the ADA and OADA.

44. Under this Count the Plaintiff is entitled to her wage loss (including back, present and front pay along with the value of benefits associated with such wages)

45. Under the ADA the Plaintiff is entitled to compensatory damages including damages for emotional distress/dignitary harm.

46. Because Defendant's conduct was willful or, at the least, in reckless disregard of Plaintiff's federally protected rights, the Plaintiff is entitled to an award of punitive damages.

47. Under the OADA the Plaintiff is entitled to liquidated damages equal to the amount of her wage loss without an additional showing of recklessness or willfulness.

## COUNT III

Plaintiff incorporates the above paragraphs and further alleges:

48. Failure to maintain accurate records of hours worked by employees, and failure to pay overtime and minimum wages, violates the Fair Labor Standards Act.

49. Under this Count the Plaintiffs and other similarly situated employees are entitled to recover their wage loss and an equal amount of liquidated damages.

50. Because the Defendant's conduct was willful the Plaintiff and other similarly situated employees are entitled to recover wage loss (including overtime and minimum wages) for a period of three years prior to the filing of this lawsuit.

## COUNT IV

51. By failing to pay Plaintiff and those similarly situated for hours they worked, including overtime hours, Defendants failed to pay them the rate of pay agreed upon with the employees, in violation of the Oklahoma Protection of Labor Act (OPLA).

52. Failure to pay minimum wages also violates the OPLA.

53. Under this Count the Plaintiff and others similarly situated are entitled to their wages loss and an equal amount in liquidated damages.

## COLLECTIVE/CLASS CERTIFICATION

54. To Plaintiff's knowledge, there are at least fifty to one hundred employees in Oklahoma who were also instructed to not record all of the hours worked and who, like the Plaintiff, worked and earned regular and overtime compensation for which they were not paid.

55. Defendant has taken the following actions with respect to Plaintiff and other similarly situated employees:

    A. Failed to maintain accurate records of the hours worked by such employees;

    B. Failed to pay minimum wages for all hours worked by such employees;

    C. Failed to pay wages for hours worked by such employees in excess of forty in a work-week;

    D. Failed to pay all wages agreed upon between the Defendant and/or the employees.

56. The actions described above constitute violations of the Fair Labor Standards Act, 29 U.S.C. §§ 206-07, *inter alia*, and Oklahoma's Protection of Labor Act, 40 Okla. St. §§ 165.1, *et seq*.

57. The Plaintiffs, together with other similarly situated employees, were victims of a single decision, policy or plan that included decisions to not pay Plaintiff and other employees minimum wages, overtime wages and/or agreed-upon wages and failed to maintain accurate records of the hours worked by such employees, in violation of the FLSA and/or OPLA.

58. The class is specifically knowable to include other employees who were instructed to not record all of their hours and/or who worked without receiving wages earned and owed.

59. For these reasons the Plaintiff is entitled to conditional certification of the class under the FLSA at this time and, after discovery is substantially complete, to file certification of the class under the FLSA and OPLA.

60. The class is sufficiently numerous that it is impractical to name each member of the class individually, such that a class action is the most economical, expeditious and just way of managing this claim.

61. There are questions of law or fact common to the class, including whether the employees worked hours and earned wages for which they were not compensated.

62. Plaintiff, as class representative, shares the same questions of law and fact with other class members and will fairly and adequately protect the interests of the class.

63. The only factual matter different between the collective plaintiffs would be the amount of wages loss and the damages owed.

## **PRAYER**

**WHEREFORE**, Plaintiff, on behalf of herself and other similarly situated, prays that they be granted judgment in her favor and against the Defendant on claims and that this Court grant the Plaintiff and others in the class all available compensatory damages, liquidated damages, pre-and post-judgment interests, costs, attorneys' fees and any other legal or equitable relief allowed by law.

**RESPECTFULLY SUBMITTED THIS 2nd DAY OF JUNE 2022.**

HAMMONS, HURST & ASSOCIATES

s/ Amber L. Hurst
Mark E. Hammons, OBA No. 3784
Amber L. Hurst, OBA No. 21231
325 Dean A. McGee Avenue
Oklahoma City, Oklahoma 73102
Telephone:  (405) 235-6100
Facsimile:  (405) 235-6111
mark@hammonslaw.com
amber@hammonslaw.com
ATTORNEY LIEN CLAIMED
*Attorneys for Plaintiff*